The plaintiff brought this action against the defendants, at the same time suing out a proceeding of claim and delivery, alleging that the defendants are in possession of numerous motor cars in which it has an interest and to which it is entitled to the possession. It is alleged that in the course of plaintiff's dealing with the defendants, V. E. Lane and B.R. Pless, partners trading as P. L. Motor Company, in the financing of automobile sales made by the partnership, the latter became liable to the plaintiff in a total of about $23,000 upon the contracts of sale so financed, and became indebted for still other amounts upon transactions occurring in the course of the business and upon collections of amounts due the plaintiff, which they refuse to pay. It is further alleged that V. E. Lane purchased the interest of B.R. Pless in the partnership, and agreed with the latter to pay the partnership debts, which arrangement the plaintiff had not accepted or approved. Plaintiff alleges that the necessities of its business demanded that it withdraw from further service to the P. L. Motor Company, which, under its agreement it had the right to do; and thereupon the defendant Lane, with the intention of *Page 192 
hindering, delaying and defeating plaintiff in the collection of the debt due by the defendants and the customers with whom they dealt, and the recovery of its property, fraudulently formed a dummy corporation in which he holds all the shares except qualifying shares which are held by his wife and one of his employees, and that the said corporation is insolvent. It is alleged that the defendant Lane fraudulently transferred to this corporation and put into its possession all of the assets belonging to the partnership and all of his individual assets, and put it in possession of the motor cars above referred to; and that, based upon these assets, including those rightfully belonging to the plaintiff, the defendant Lane is endeavoring to sell stock in the newly formed corporation in a way that will jeopardize the rights of plaintiff in its property. It is alleged that the corporation is proceeding to collect money on the sales contracts due the plaintiff and which the plaintiff only has a right to collect, and wrongfully retains the same; that the corporation continues to deal with the property of the plaintiff as its own; and that said property is likely to deteriorate or to be destroyed unless relief is given to the plaintiff. On plaintiff's application a restraining order was issued, which was continued to the hearing of the cause.
The answer of the defendant Pless admits most of the plaintiff's allegations, alleges that upon the sale of his interest to Lane the latter assumed all debts and obligations of the partnership, and asks that his equities be protected in any judgment rendered in the case. He further asks for an accounting and joins the plaintiff in the request for a receiver.
The defendant Lane and the Lane Motor Sales Service, Inc., answering, denied the material allegations of the complaint and set up a further defense and counterclaim based upon an alleged want of good faith on the part of the plaintiff in suing out and maintaining the present action and the ancillary remedies therein, which, in the pleading, is denominated a malicious abuse of process. Therein, after alleging that the sales contracts, which largely form the basis for the action, were void because usurious, and were the result of a conspiracy in which plaintiff participated, the defendant corporation states its counterclaim as follows: "That on account of the defendant's unlawful, wilful, wanton, and malicious abuse of process as hereinbefore alleged in suing out a writ of claim and delivery and a restraining order enjoining the operation of this defendant's business, and the plaintiff's efforts to enforce the alleged contracts, hereinbefore set forth, which were illegal and void because of the unlawful conspiracy entered into this answering defendant has been damaged in the amount of $100,000.00"; and demands recovery of this amount.
In the course of the proceeding, on motion of plaintiff and B.R. Pless, a receiver was appointed, and to this order the defendants excepted and *Page 193 
gave notice of appeal which was not perfected. Subsequently the plaintiff, conceiving that all of the property designated in this order had not been turned over to the receiver, applied to the court to have the specific property, including books, records, papers, stock books, canceled checks, check stubs, deposit books, and other papers concerning the operation of the business, turned over to the receiver, basing this request upon an allegation that the defendant had not theretofore turned them over on demand of the receiver. An order to this effect was made, and defendants excepted, and Lane Motor Sales Service, Inc., appealed.
At November Term, 1941, of Caldwell Superior Court the plaintiff demurredore tenus to the counterclaim of Lane Motor Sales Service, Inc., set out in its separate answer as above stated, and the judge presiding sustained the demurrer, and the defendant, Lane Motor Sales Service, Inc., excepted and appealed. At the same term the plaintiff and the defendant Pless made a motion for the appointment of a referee on the ground that the action involves the taking of a complicated account between plaintiff and defendants, and a reference was ordered. This order contains the following provision: "The Court has heretofore sustained demurrers to certain portions of the Lane Motor Sales Service, Inc., pleadings, and said defendant has given notice of appeal to the Supreme Court. Therefore, the Referee is directed to delay the taking of testimony until such times as said appeals have been withdrawn or disposed of by the Supreme Court." The defendants excepted and Lane Motor Sales Service, Inc., appealed. The defendant V. E. Lane excepted to these orders, but the record shows no entry of appeal on his part, and he files no brief in this Court, although apparently joining in some of the assignments of error.
There are three assignments of error in the record: (1) "enlarging the powers of the receiver" in the second order; (2) sustaining the demurrer to the counterclaim; (3) making the order of compulsory reference.
The pleadings in this case themselves fill perhaps eighty of the ninety-one pages of the record. Space forbids detailed analysis, but the foregoing summary is sufficient for an understanding of this appeal and the grounds upon which decision is based.
(1) The exception to the order referred to by the defendant as enlarging the scope of the receivership cannot be sustained. The allegations of the complaint were sufficient to put it within the discretion of the court *Page 194 
to order the documents in question turned over to the receiver in the first place, if, indeed, the original order of the court did not include them; and the arm of the court is not shortened because the relief was not extended in the first instance. It is that sort of remedy which the court may apply at any time pending the litigation in dealing with an insolvent corporation where the facts warrant the exercise of the power. Skinner v.Maxwell, 66 N.C. 45; Whitehead v. Hale, 118 N.C. 601, 24 S.E. 360;Witz, Biedler Co. v. Gray, 116 N.C. 48, 20 S.E. 1019; Kelly v.McLamb, 182 N.C. 158, 108 S.E. 435; Bank v. Waggoner, 185 N.C. 297,117 S.E. 6; Hurwitz v. Sand Co., 189 N.C. 1, 126 S.E. 171; C. S., 860.
(2) The plaintiff insists that the defendant has erroneously designated the subject of his counterclaim as abuse of process, whereas, as presented, it is in reality malicious prosecution. In an action for malicious prosecution, the offending proceeding must have terminated before complainant may bring his action. Ludwick v. Penny, 158 N.C. 104,73 S.E. 228; Brinkley v. Knight, 163 N.C. 194, 79 S.E. 260. That limitation does not apply to an action for abuse of process. Since, of course, the pending action to which the counterclaim refers has obviously not terminated, the plaintiff contends that the counterclaim is not available to the defendant, and that the demurrer should be sustained on that ground.
But passing this for the moment, it has been questioned whether, regardless of these categories, the proposed counterclaim is not affected by further infirmities growing out of the time and occasion of its presentation — the circumstance that it had not accrued, in other words did not exist, at the commencement of plaintiff's action, and that it is not connected with the subject thereof within the meaning of the statute. C. S., 521; Kramer v. Electric Co., 95 N.C. 277; Phipps v.Wilson, 125 N.C. 106, 34 S.E. 227; Smith v. French, 141 N.C. 1,53 S.E. 435; Sewing Machine Co. v. Burger, 181 N.C. 241, 107 S.E. 14;Godwin v. Kennedy, 196 N.C. 244, 145 S.E. 229.
Down to Smith v. French (1906), supra, it was uniformly held that a counterclaim growing out of the institution and maintenance of the action in which it is interposed was objectionable as not having matured when plaintiff's action was commenced. Phipps v. Wilson, supra. Smith v. French,supra, adopted a contrary view, and the Court seemed to be conscious of establishing a new rule of general application in this regard. McIntosh, North Carolina Practice and Procedure, sec. 467. Query: whether Wright v.Harris, infra, and Godwin v. Kennedy, supra, has re-established the authority of Phipps v. Wilson, supra, and cases holding similarly.
To be available, however, such a counterclaim must, nevertheless, grow out of the transaction upon which plaintiff's action is based and be connected with that action within the meaning of the statute. *Page 195 
When the defendant's counterclaim lies in tort, the statute finds the test of eligibility in plaintiff's pleading. C. S., 521 (1). In the instant case the transaction set out in the complaint as the basis of plaintiff's action is not the same as that out of which the counterclaim arose — both time and circumstance negative that — and it is more than questionable whether defendant's alleged cause of action, as alleged, is sufficiently connected with the subject of plaintiff's action to come within the statute, however available it may be in an independent action. The circumstance that it grew out of plaintiff's action does not, ipsofacto, establish such relation. The subject of plaintiff's action is certainly not the action itself or any remedy plaintiff may pursue, or the manner in which these proceedings are instituted or prosecuted. That subject matter is the default of defendant in retaining plaintiff's property, collecting and refusing to pay over its moneys, endangering its assets, and refusing to pay plaintiff's claim. The subject of the counterclaim as laid, however, does lie in the wrongful institution of plaintiff's action and the manner of its prosecution. The connection between the two is not that of substance but of historical sequence. There is, of course, a thread of sequence in the sense of the common expression, "One thing led to another," but there is no agreement between the subject matter of plaintiff's action and that of defendant's counterclaim in interest or substance or similarity of causes. Weiner v. Style Shop,210 N.C. 705, 708, 188 S.E. 331. To be within the statute, we are persuaded that the connection must be more than incidental or casual — the subjects must be germane. Giving to the statute that liberal construction to which it is entitled, it is nevertheless true that the wider latitude given it as a substitute for the narrow and more technical practice of the common law brought with it certain dangers which necessitated a limitation on its scope. Counterclaims, as we know them, were born of the statute, and with the cowl of its restriction upon them. Proper regard for the orderliness of judicial investigation demands that its enabling features shall not be expanded at the expense of its reasonable restrictions. We think the statute was intended at least to eliminate mere recriminations between the parties and prevent the hearing from becoming a squabble or brawl.
 "`The time has come,' the walrus said, `To talk of many things; Of ships and shoes and sealing wax, Of cabbages and kings.'"
We find no such indecorum in defendant's well-written pleading, as suggested in Lewis Carroll's whimsy. But at the same time we do not find that substantial connection between defendant's counterclaim and *Page 196 
the subject of plaintiff's action which we think the statute requires to make it available here. If asserted at all, it must be by independent action.
Moreover, on a careful examination of the pleading, we are constrained to hold that the court below was correct in holding that defendant's counterclaim is, at most, a plea of malicious prosecution. It challenges the original proceeding, ex stirpe, as maliciously instituted and prosecuted, but it alleges no act of the plaintiffs in that proceeding which could, under proper legal definition, constitute abuse of process.
The gravamen of an action for malicious prosecution is the wrongful institution or prosecution of the action or proceeding without probable cause, to the hurt and damage of the complainant. In such case "a suit for malicious prosecution will lie where the plaintiff's property or business has been interfered with by the appointment of a receiver, the granting of an injunction, or by writ of replevin." Cooley on Torts, 3d Ed., p. 348. The gist of an action for abuse of process is the improper use of the process after it has been issued. Glidewell v. Murray-Lacy Co.,124 Va. 563, 98 S.E. 665, 4 A.L.R., 225; 1 Am. Jur., Abuse of Process, § 34. "The distinctive nature of an action for abuse of process, as compared with an action for malicious prosecution, is that the former lies for the improper use of process after it has been issued, not for maliciously causing process to issue." 1 Am. Jur., Abuse of Process, § 3. In an action for abuse of process "Two elements are necessary: first, an ulterior purpose; second, an act in the use of the process not proper in the regular prosecution of the proceeding." Cooley on Torts, 3d Ed., p. 355; R. R. v.Hardware Co., 143 N.C. 54, 59, 55 S.E. 422; Jackson v. Telegraph Co.,139 N.C. 347, 356, 51 S.E. 1015. "The test as to whether there is an abuse of process is whether the process has been used to accomplish some end which is without the regular purview of the process, or which compels the party against whom it is used to do some collateral thing which he could not legally and regularly be compelled to do." 1 Am. Jur., Abuse of Process, § 6; Annotations, 80 A.L.R., 580. For illustrations of such abuse, see 1 Am. Jur., ibid., § 11, et seq. In point is the comprehensive and clear analysis in Ludwick v. Penny, supra (158 N.C. 104,73 S.E. 228), containing appropriate references to Judge Cooley's basic distinctions above noted. See, also, Wright v. Harris, 160 N.C. 543,551, 552, 76 S.E. 489.
Defendant contends that it is an abuse of process to sue out and prosecute an action maliciously and without probable cause, and that may be, in consequence at least, morally true, although it would be more exact to term it an abuse of the courts. But the distinction is one of the law, and is sound in principle from an administrative point of view. There is no abuse of process where it is confined to its regular and legitimate function *Page 197 
in relation to the cause of action stated in the complaint. Jackson v.Telegraph Co., supra; Wright v. Harris, supra; Jerome v. Shaw, 172 N.C. 862,90 S.E. 764; Annotations, 80 A.L.R., 580; 86 A.L.R., 398.
If the plaintiff has brought the action or instituted the process and prosecuted the same with malice and without probable cause, the complainant may have his full relief by an action for malicious prosecution.
As we have stated, the defendant has alleged that the plaintiff had an ulterior purpose in the institution and prosecution of the original action, but there is no allegation of any act done by the plaintiff which could be classified as abuse of process. Mere adjectival denunciation will not be sufficient. Facts must be alleged upon which the court could determine that the gravamen of his action is of that character.
We need not consider the question whether the counterclaim sufficiently states a cause of action for malicious prosecution, since such an action could not be brought until the termination of the present action, out of which it is said to arise.
(3) Conceiving its counterclaim to be a plea in bar of plaintiff's action, the defendant insists that the order of compulsory reference is invalid, because made over objection before that plea had been determined.Bank v. Fidelity Co., 126 N.C. 320, 35 S.E. 588; Graves v. Pritchett,207 N.C. 518, 177 S.E. 641.
The rule that a plea in bar should be disposed of before the case is heard on its merits is one of convenience and far from invariable. There are instances in which the court is justified, in its discretion, in hearing the plea along with the general evidence on the merits. McAuley v.Sloan, 173 N.C. 80, 91 S.E. 701. Generally speaking, however, the rule is as contended by the defendant.
But defendant's proposed counterclaim is not a plea in bar. It is a cross-action sounding in tort — the infliction of an injury for which defendant demands full compensation.
A plea in bar is one which goes to the plaintiff's right to maintain his action — not merely a plea which, in the course of the trial, may prevent his recovery of the sum demanded or any sum because of a mere balancing of demands. It bars or defeats the right of action itself. As expressed in Jones v. Beaman, 117 N.C. 259, 261, 23 S.E. 248, it is a plea "that denies the plaintiff's right to bring and maintain his action."McAuley v. Sloan, supra; Bank v. Evans, 191 N.C. 535, 132 S.E. 563. "The office of a plea in bar at law is to confess the right to sue; avoiding that by matter dehors, and giving the plaintiff an acknowledgment of his right, independent of the matter alleged in plea. Flagg v. Bonnell,10 N.J. Eq., 82, 84. It is said in Hurst v. Everett, 91 N.C. 399, 403, that "A counterclaim includes every defense to the action, except a demurrer, which does not amount to a plea in bar. . . . In that *Page 198 
sense, a counterclaim is a cross action against the plaintiff, and in stating the cause of action it is governed and judged by the same rules which apply to the complaint: the facts alleged must be sufficient to constitute the cause of action, and the relief to which the defendant is entitled should be properly demanded. Pomeroy on Rem. and Rem. Rights;Garrett v. Love, 89 N.C. 205." A plea in bar is not asserted as a cause of action.
It is true that in McDowell v. Tate, 12 N.C. 249, it is held that one having an eligible demand equal to or greater than that of the plaintiff may plead it as a set-off, and such a plea is called a plea in bar. In Derrv. Stubbs, 83 N.C. 539, and in McClenahan v. Cotten, 83 N.C. 333, it is held that such a plea is still available under the Code. But its designation as a plea in bar may be understood from the following quotation from Electric Co. v. Williams, 123 N.C. 51, 53, 31 S.E. 288: "It originated in the Bankrupt Act of IV and V Anne, ch. 17, suggested, perhaps, by the compensatio of the civil law, but was given general application by the statutes of 2 George, II Chapter, 22, and 8 George, II Chapter, 24, which enact: `That where there are mutual debts between the plaintiff and defendant, one debt may be set against the other, and either pleaded in bar or given in evidence upon the general issue at the trial, which shall operate as payment, and extinguish so much of the plaintiff's demand.' 3 Bl., 304. Payment extinguished the debt at the time of payment, while a set-off required mutual existing debts, and operated as payment
only when pleaded and by judgment of the court."
The device is based on the fiction of payment, and the countervailing demand, in set-off, is limited to that function. The rule serves no economy, as do ordinary pleas in bar, since the validity of the opposing claims demanded, and in practice received, simultaneous investigation of the same kind. Moreover, there is no reason to continue this limited common law prototype of modern counterclaim, since the statute, C. S., 521, gives full relief by admitting demands of that character as counterclaims at their full value, which the common law did not. This, however, is not a matter of present concern.
A cross action for an unliquidated demand sounding in tort cannot be made the subject of set-off, and it is not so pleaded in the case at bar. The simple allegation that plaintiff's action is without foundation and malicious, or that there is an abuse of process, does not operate as a plea in bar.
The disposition of this appeal leaves the order of reference valid and standing without the vain requirement that the court should make it again.
There is
No error. *Page 199